MOBLEY v. CHARLOTTE &c. RAILROAD COMPANY.[1]

1. SHIPMENT—EVIDENCE—VERDICT.—In an action to recover damages from a railroad company for delay in shipping cattle, the question as to the route by which the cattle were agreed to be shipped is, in the absence of a bill of lading, a question of fact for the jury; and there being no evidence of any delay in the shipment by the route adopted, a verdict for defendant established that as the route agreed upon.

2. VERDICT—IMMATERIAL ERRORS.—The verdict having established, under proper instructions, that there were no damages, alleged error in the charge of the judge, as to the measure of damages and as to the facts bearing upon this issue, become immaterial.

3. IRRELEVANCY—EVIDENCE.—The admission in evidence of a blank form of a released contract, cannot be objected to on appeal, for, even if irrelevant, its introduction was within the trial judge's discretion, and, besides, it tended more fully to explain what was a released contract, as to which there had been testimony.

4. WAYBILL.—The charge in this case did not declare a waybill to be the contract between the parties, but only that it was a written memorandum made at the time by the carrier and seen by the shipper.

Before HUDSON, J., Richland, October, 1893.

Action by John G. Mobley against the Charlotte, Columbia and Augusta Railroad Company, to recover damages resulting from delay in the shipment of cattle on November 19, 1891, by a longer route than that which plaintiff had directed. So much of the charge as referred to the waybill was as follows:

Then the question is as to contract: What was the contract at White Oak? So far as you have any written memorandum, there was no bill of lading made out. The only written memorandum made out at the time by the agent at White Oak is exhibited to you here, where it has the point of shipment as "White Oak"—from White Oak to Augusta, Ga., destination Savannah, Ga., with all the other elements of a simple waybill. Now, I say that is the only memorandum of the contract of shipment which was made out at that time. Mr. Mobley says that he did not desire it shipped by Augusta—the carload—but desired it shipped by the South Bound; that the agent told

---

1 See note to case of Adler *v.* Cloud, *ante*, p. 272.

him he could not ship it by the South Bound; that they had an argument about it, and that the agent finally, as he started off to Winnsboro to come back on the next train, said he would change the waybill; Mr. Mobley could not wait for him, and left a note there for him; but I believe before leaving he saw the agent's brother, and he asked him to change the waybill, and he told him that he was not the agent and could not do it, his brother saying that the only addition he made was in these words, "Negro in charge," or something of that kind; and that he delivered the message to his brother when he arrived; that the cattle were on the car and the train was about to go out, the car of cattle being already in position. Now, Mr. Mobley's testimony is that he wished to ship by the South Bound, and gave his reasons for it, but that the agent made out the bill to ship via Augusta; and the testimony of the agent is that—I do not pretend to give the words, only the substance—that he told Mr. Mobley he could not ship by the South Bound, but would ship by Augusta; that the waybill was made out for that way; that there was no other arrangement between him and Mr. Mobley, and that closed the matter, and he never had any further conversation with Mr. Mobley about it. You have heard the testimony. You have the testimony of the agent, Mr. Patrick, and the testimony of Mr. Mobley, and the testimony of the other witnesses to the transaction there, and you are to say, gentlemen, from the preponderance of the testimony, from the weight of the testimony, what was the contract on that occasion.

What did the railroad, through its agent, undertake to do? Did it undertake to ship by the South Bound, or did it undertake to ship by Augusta? If, from the preponderance of the evidence, the railroad company, through its agent, undertook to ship by Augusta, according to this waybill—and there is no other—why then the shipment was made by that route, and if there was no unreasonable delay by that route, but the shipment was made with the usual dispatch incident to shipment of freight (loaded car), that's an end of the case. There would be no damage against the railroad company, none whatever. Don't misunderstand me; if that was the contract of shipment,

and the shipment was made by that route with the usual and reasonable dispatch incident to shipment of cattle, so that there was no unreasonable delay in shipping by that route, that's an end of the case, and your verdict must be for the defendant. Now, if in shipping by that there was unreasonable delay—and you must gather from the testimony whether there was or not—the delay complained of plaintiff is that delay which occurred by not shipping by the South Bound—that's the delay the complaint complains of, by not shipping by the South Bound—and if in shipping by the regular route, according to this waybill, there was unreasonable delay—if there is any evidence of that, the railroad would be responsible for any damage occasioned by unreasonable delay by this route; but you would have to have evidence of unreasonable delay. * * *

Now, here comes the next question. Suppose the agent did consent to change the waybill, and to ship by South Bound? Then the question would arise, did the agent have the authority to make that contract, and would the company be responsible for the breach of that contract? If that agent had been in the habit of making through shipments over that line, Mr. Mobley knowing the fact, or even if he dealt that way himself, and the agent on that occasion had actually assumed to make a contract over the South Bound, and there had been no testimony in regard to the question of authority, and you should conclude that the contract was made in that way, then the company would be responsible; but if that agent informed Mr. Mobley that he couldn't ship by the South Bound, that there was no traffic arrangement, and made out the waybill by Augusta, and told him that was the only route that he could have rates over and make shipments over, and waybilled it in this way, the cattle went in the car, and the waybill was not changed, and Mr. Mobley knowing it was not changed and suffered the car to go off, why there would be no violation of the contract.

*Messrs. McDonald, Douglass, & Obear,* for appellants.

*Mr. B. L. Abney,* contra.

September 12, 1894.   The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.   This was an action to recover
damages for the breach of a contract alleged to have been made
between the parties, whereby the defendant company undertook
to transport a lot of cattle from White Oak, a station on de-
fendant's road, about forty miles above Columbia, to Savannah,
in the State of Georgia; and the only controversy, so far as the
terms of the contract were concerned, seems to have been as to
the route by which such shipment was to be made.   The plain-
tiff claimed that the contract required the cattle to be shipped
*via* the South Bound Railroad, having its northern terminus at
the city of Columbia, while the defendant insisted that the
contract was to ship the cattle *via* Augusta, in the State of
Georgia.   The cattle were in fact shipped by the latter route,
and reached Savannah about twenty-four hours later than they
would have done if shipped by the way of the South Bound
Railroad; and the plaintiff claims damages for the delay oc-
casioned by reason of the breach of the contract, as set up by
him.

There was no evidence in writing as to what route the real
contract between the parties required the shipment to be made
by, and the parol evidence was directly conflicting as to that
point; and the jury were instructed that they must determine
from the conflicting evidence what was the real contract be-
tween the parties, and, if they found that the contract was to
make the shipment *via* Augusta, the plaintiff was not entitled
to recover any damages at all, unless they also found that
there was some unreasonable delay in transporting the cattle
by the Augusta route.   If, however, they should find that the
real contract was to make the shipment *via* the South Bound
Railroad, then the plaintiff would be entitled to recover such
damages as resulted from the twenty-four hours delay in reach-
ing the point of destination, and the jury were instructed as
to the measure of damages in such case.   The jury found a
verdict in favor of the defendant, and the plaintiff appeals upon
the several grounds set out in the record.

It is very manifest that the first and controlling question
in the case was as to what route the contract required the
shipment to be made by; and this being a question of fact

(there being no written evidence of the contract), the verdict of the jury must be regarded as conclusive. Under the instructions given to the jury, they must necessarily have found that the contract required the shipment to be made *via* Augusta, for otherwise they would have been compelled to find *some* damages in favor of the plaintiff; and as there was no evidence of any delay in the transportation of the cattle by the Augusta route, the result necessarily was, just as we find it to be, a verdict in favor of the defendant.

In an action to recover damages for the breach of a contract, the first inquiry necessarily is, what was the contract, and whether there has been any breach of it? and until this has been determined, no question as to the amount or the measure of damages can possibly arise. *Devereux v. Champion Cotton Press Company*, 17 S. C., 66. Where, therefore, as in this case, the first and controlling inquiry has been determined in favor of the defendant, as we have seen, no inquiry as to the damages can arise; and hence the several grounds of appeal, in which error is imputed to the Circuit Judge in his instructions to the jury as to the measure of damages, need not be considered; for even if error should be found therein (which we neither affirm nor deny), such supposed error cannot possibly affect the result. The same remark may be made in reference to so much of the charge as is excepted to, because of its supposed invasion of the province of the jury in relation to questions of fact; for that portion of the charge relates to the matter of damages, an inquiry which never was reached, by reason of the findings of the jury upon the first question.

The fifth ground of appeal imputes error to the Circuit Judge "in allowing defendant to introduce in evidence a blank form of a contract, called a released contract, without showing that the said form of contract had any connection with, or bearing upon, the issues of this case." At the most, the testimony here objected to was irrelevant, and the rule is well settled that the introduction of such testimony is largely subject to the discretion of the Circuit Judge. Besides, the "Case" shows that this paper was received mainly for the purpose of explaining more fully the meaning of a released

contract, as to which the plaintiff had been permitted, without objection, to speak of in his cross-examination. We do not, therefore, see any such error in receiving this paper in evidence, as would warrant the granting of a new trial.

It only remains to consider the several exceptions to the charge of the Circuit Judge, imputing error in the charge in reference to the waybill. We think it is a mistake to suppose that the judge charged that the waybill was the contract between the shipper and the carrier His language cannot properly be considered as conveying any such idea to the jury. On the contrary, it seems to us that the jury were made to understand that there was no contract in writing, "no bill of lading made out," and all that was said, upon this point, was that the waybill was the only written *memorandum* made out at the time by the agent at White Oak, and this was exactly the fact. Indeed, if the judge had regarded the waybill as constituting the contract, there would have been no question of fact to be referred to the jury, whereas the jury were distinctly instructed to inquire what was the contract between the parties, and their attention was called to the conflicting testimony as to that question, and the waybill was only referred to as one of the circumstances tending to show that the railroad agent, at least, understood that the shipment was to be made *via* Augusta, and it was so entered npon the waybill, which was seen by the plaintiff. We do not think that any of the exceptions as to this point can be sustained.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.